UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO: 4:21-CV-00041-JHM

J.M., a minor, age 4, by his Court Appointed                        PLAINTIFFS
Guardian, PATRICIA EVANS, and MICHELLE
VANNOY

V.

MELISSA D. HATFIELD and ANNA BROWN                        DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on a motion to dismiss and/or motion for summary judgment

by Defendants, Melissa D. Hatfield and Anna Brown.  [DN 16].  Fully briefed, this matter is ripe

for decision.  For the following reasons, Defendants' motion is **GRANTED IN PART AND**

**DENIED IN PART**.

I. BACKGROUND

Plaintiffs Michelle Vannoy and J.M. were the occupants of a vehicle owned by Roger

Evans.  [DN 1-2 ¶¶ 3, 4, 5, 8].  Vannoy was driving the vehicle when she was allegedly rear-ended

by a vehicle driven by Defendant Melissa Hatfield.  [*Id.* at ¶¶ 3, 5].  Vannoy and J.M. were injured.

[*Id.* at ¶¶ 7, 9].  The vehicle that Hatfield was driving is owned by Defendant Anna Brown [*Id.* at

¶ 10] and insured by Lighthouse Casualty Company ("Lighthouse").  After the accident,

Lighthouse filed an interpleader action in Vanderburgh Superior Court in Indiana court to permit

the distribution of the insurance proceeds to all claimants.  [DN 16-5].  Lighthouse named a number

of individuals to its interpleader action, including J.M., Vannoy, Hatfield, and Brown.  Lighthouse

submitted proof of service for J.M., Vannoy, and Brown and indicated that Hatfield was

represented by counsel.  [DN 16-10, DN 16-11].  On November 12, 2020, Lighthouse filed a

motion to deposit funds and for summary declaratory judgment which informed the court that the

participating claimants, including minor J.M., had agreed on a disbursement of the $50,000 policy limits. [DN 16-11]. On December 3, 2020, defendants to the interpleader action, J.M. and three other individuals who were injured—M.H., James Hicks, and L.F.—filed a joint motion to consent to entry of Lighthouse's declaratory summary judgment, deposit of funds, and motion to disburse the funds. [DN 16-12].

Prior to the resolution of the interpleader action, J.M. and Vannoy filed a separate lawsuit (hereinafter "the first negligence action") arising out of the subject accident in Hopkins Circuit Court on November 25, 2019, against Hatfield, Brown, and Lighthouse. [DN 16-16]; *J.M. v. Hatfield*, Civil Action No. 4:19-CV-183-JHM. Lighthouse removed that suit to federal court. [DN 16-17]. Lighthouse then moved to dismiss the case against it for lack of personal jurisdiction. [DN 16-18]. The Court agreed and granted Lighthouse's motion to dismiss on April 23, 2020. [DN 16-19]. On April 27, 2020, the Court entered an Order requiring plaintiffs to the first negligence action to show cause as to why the Court should not dismiss the remaining claims based on plaintiffs' failure to properly serve defendants Hatfield and Brown. [DN 16-20]. After granting J.M. and Vannoy an additional 90 days to effectuate service on Hatfield and Brown, the Court issued another Show Cause Order on October 13, 2020. [DN 16-22]. Eventually, the first negligence action was dismissed "without prejudice" on March 17, 2021, because plaintiffs failed to serve either remaining defendant. [DN 16-23].

On March 17, 2021, J.M. and Vannoy filed a new complaint in the Hopkins Circuit Court against Defendants Melissa Hatfield and Anna Brown, alleging they were liable for damages resulting from the accident. [DN 1-2]. Hatfield removed the matter to federal court and answers were filed by both Defendants. [DN 1, DN 5, DN 8]. Hatfield and Brown have now filed a motion to dismiss and/or motion for summary judgment arguing that (1) Vannoy's complaint should be

dismissed with prejudice because the statute of limitations had run before her complaint was filed and (2) J.M.'s complaint should be dismissed with prejudice under the doctrine of accord and satisfaction.

## II. STANDARD OF REVIEW

### A.  Motion to Dismiss

Upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a court "must construe the complaint in the light most favorable to plaintiff," *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted), "accept all well-pled factual allegations as true[,]" *id.*, and determine whether the "complaint states a plausible claim for relief[,]" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Under this standard, the plaintiff must provide the grounds for his or her entitlement to relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A plaintiff satisfies this standard only when he or she "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  A complaint falls short if it pleads facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct." *Id.* at 678, 679.  Instead, the allegations must "'show[ ] that the pleader is entitled to relief.'"  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

In resolving motions to dismiss, a court may consider the well-pled factual allegations in the complaint, exhibits attached to or incorporated by reference into the complaint, matters of public record, and records of which the Court may take judicial notice. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).  If "matters outside the pleadings are presented to and not excluded

by the court" when ruling upon a motion under Rule 12(b)(6), the Federal Rules require that "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

## B. Summary Judgment

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U .S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

## III. DISCUSSION

## A. Vannoy's Claims

Defendants argue that Vannoy's complaint should be dismissed with prejudice because the statute of limitations had run before her complaint was filed. Specifically, Defendants provide

evidence that following the accident, Michelle Vannoy sought treatment for her alleged injuries. Vannoy's insurer, Kentucky Farm Bureau, provided Personal Injury Protection (PIP) Benefits on behalf of Vannoy for her medical expenses allegedly incurred because of the subject accident in the form of reimbursement payments made to her medical providers. [DN 16-24]. Vannoy's PIP coverage was exhausted on April 5, 2018, which was the date of the final payment made on her behalf. [*Id.*]. Because the present lawsuit was filed by Vannoy more than two years and eleven months after the date of the last PIP payment, Defendants argue that Vannoy's complaint is therefore time-barred by the applicable statute of limitations. [DN 16 at 6–9]. Because Defendants utilized matters outside the pleadings, the Court will review facts under the summary judgment standard of review. Fed. R. Civ. P. 12(d).

### 1. Statute of Limitation

Kentucky's Motor Vehicle Reparations Act "sets the applicable limitations period for claims arising out of a motor vehicle accident." *Wilson v. Butzin*, 854 F. App'x 682, 685 (6th Cir. 2021) (citing *Interlock Indus., Inc. v. Rawlings*, 358 S.W.3d 925, 927–28 (Ky. 2011) (explaining that the Act applies to "accidents occurring in [Kentucky] and arising from the ownership, maintenance or use of a motor vehicle" (emphasis and citation omitted)); *see Atl. Richfield Co. v. Monarch Leasing Co.*, 84 F.3d 204, 205 (6th Cir. 1996) (explaining that "[t]he statute of limitations of the forum state applies in federal diversity cases")). Under the Act, Vannoy "was required to commence this action within two years of 'the date of issuance of the last basic or added reparation payment made by any reparation obligor.'" *Wilson*, 854 F. App'x at 685 (quoting KRS § 304.39-230(6)); *see also Beaumont v. Zeru*, 460 S.W.3d 904, 906 (Ky. 2015). With the last PIP payment to Vannoy having issued from her insurer on April 5, 2018, Vannoy was required to commence this lawsuit by April 5, 2020.

Vannoy disagrees arguing summary judgment is not appropriate on her claims because on the same day the district court dismissed without prejudice the first negligence action, she filed this current action resulting in a continuous compliance with the statute of limitations.  [DN 17, DN 18].

Contrary to Vannoy's argument, the filing of a complaint which is later dismissed without prejudice does not toll the statute of limitations.  *Wilson v. Grumman Ohio Corp.*, 815 F.2d 26, 28 (6th Cir.1987); *Adams v. Saul*, No. CV 7:19-88-KKC, 2020 WL 7083939, at *2 (E.D. Ky. Dec. 3, 2020); *Knox v. United States*, No. 5:15-CV-198-JMH, 2016 WL 1355046, at *2 (E.D. Ky. Apr. 5, 2016).  *See also Scott v. Davis*, No. 2013-SC-000228-DG, 2015 WL 3631136, at *4 (Ky. June 11, 2015).[1]  "'An action dismissed without prejudice leaves the situation the same as if the suit had never been brought.'"  *Knox*, 2016 WL 1355046, *2 (quoting *Garrett v. United States*, 640 F.2d 24, 26 (6th Cir. 1981) (quoting *Kington v. United States*, 396 F.2d 9, 10 (6th Cir. 1968))).  "[I]f the limitations period has run by the time the dismissal is filed, the new action is generally untimely."  *Crawford v. United States*, No. 1:15-CV-865, 2015 WL 6964580, at *2 (N.D. Ohio Nov. 9, 2015) (citing *Wilson*, 815 F.2d at 28).

The first negligence action was filed on November 25, 2019, and dismissed without prejudice on March 17, 2021.  [DN 16-23].  As discussed above, the two-year statute of limitations under KRS § 304.39-230(6) expired on April 5, 2020.  Thus, the statute of limitations expired while Vannoy's earlier suit was pending.  But the pendency of the first negligence action "did not

---

[1] Likewise, in Kentucky, "[a] dismissal without prejudice leaves the parties as if no action had been instituted." *Magill v. Mercantile Tr. Co.*, 81 Ky. 129, 132 (1883).  "'Thus, a claimant whose action is dismissed without prejudice must file a new action within the required statute of limitations.'"  *Smith v. Jordan*, No. 2020-CA-1556-MR, 2021 WL 3817633, at *1 (Ky. Ct. App. Aug. 27, 2021) (quoting *Scott v. Davis*, 2013-SC-000228-DG, 2015 WL 3631136, at *4 (Ky. Jun. 11, 2015)).

toll the statute of limitations." *Knox*, 2016 WL 1355046, *3 (citing *Crawford*, 2015 WL 6964580, *1–2). Vannoy's failure to comply with the two-year statute of limitations bars her present claims.

### 2. *Avoidance of Service*

Plaintiffs argue that because Defendants purposefully evaded service of process in the first negligence action, Vannoy's current complaint should not be dismissed based upon statute of limitations grounds. [DN 17, DN 18]. The Court rejects this argument.

Plaintiffs put forth no evidence in support of their allegation that Brown and Hatfield purposefully evaded service in the first negligence action. In fact, in the first suit, counsel filed a status report on January 14, 2021, requesting an additional sixty days to complete the settlement with defendants' insurance carrier, Lighthouse Casualty Company, in the Indiana interpleader action prior to service of process of Brown and Hatfield because "Plaintiffs would have a problem attempting to proceed in this court until the Indiana case is totally settled." [*J.M. v. Hatfield*, 4:19-CV-00183-JHM, DN 27 at 1–2].[2] The court denied that request finding that "an intentional, strategic decision by counsel to delay service of process does not support a finding of good cause under Rule 4." [*Id.*, DN 28 at 1]. In its discretion, the court then permitted counsel an additional 30 days to effectuate service on Brown and Hatfield. [*Id.*]. Because plaintiffs did not serve them within the specified time period, the court dismissed the first negligence action without prejudice. [*Id.*, DN 29 at 2]. Based on the last four months of pleadings in the first negligence action, counsel's failure to serve Brown and Hatfield within the time period mandated by Federal Rule of

---

[2] Additionally, on October 2, 2020, plaintiffs also noted in response to a show cause order issued by the court in the first negligence action that: "If the Plaintiff . . . had served Melissa Hatfield, the driver and Anna Brown the owner of the vehicle while these two (2) Interpleader Actions in State Court are pending it is believed this would have caused a problem in attempting settlement for J.M. and the Interpleader in Indiana with Lighthouse Casualty Company and even in the Interpleader in Kentucky with Kentucky Farm Bureau." [*J.M. v. Hatfield*, 4:19-CV-00183-JHM, DN 25 at 2–3].

Civil Procedure 4 was a strategic decision and not a purposeful evasion of service by Brown and Hatfield.

Furthermore, the record in the present case reflects that Plaintiffs successfully served Hatfield and at the very least constructively served Brown within two weeks of filing the new complaint—the day the first negligence action was dismissed without prejudice.  Plaintiffs' failure to obtain the correct address and effectuate service during the first suit does not point specifically to evasion of service of process by Hatfield and Brown and does not excuse Plaintiff's failure to comply with Federal Rule of Civil Procedure 4.[3]

In sum, Vannoy's claims against Defendants are barred by the statute of limitations.  Thus, the Court will grant Defendants' motion for summary judgment on Vannoy's claims.

## B.  J.M.'s Claims

Defendants maintain that J.M.'s complaint is barred by the doctrine of accord and satisfaction by use of an instrument, i.e., a check, pursuant to KRS § 355.3-311(1) based on his acceptance of the $22,500 in settlement proceeds from Lighthouse.  [DN 16-1].  Specifically, Defendants contend that the record reflects that: Lighthouse insured the vehicle that Hatfield was operating at the time of the accident; pursuant to an order entered in the interpleader action by the Vanderburgh Superior Court, Lighthouse reached an agreement with J.M. regarding distribution of its available settlement proceeds; that J.M. was compensated for all of his claims in the form of the $22,500 payment tendered by Lighthouse; and that the exact amount of J.M.'s personal injury claim was subject to a bona fide dispute.  Defendants argue that the only way J.M. could have prevented his claim from being discharged would have been to repay the $22,500 to Lighthouse within 90 days, which he did not do.  Based on these facts, Defendants assert that J.M.'s complaint

---

[3] Given this decision, the Court need not decide whether purposeful evasion in the first action could toll the statute of limitations in the second action.

Case 4:21-cv-00041-JHM-HBB    Document 25    Filed 04/01/22    Page 9 of 14 PageID #: 241

must be dismissed pursuant to the doctrine of accord and satisfaction because he accepted payment

in full satisfaction of his claim arising out of the January 28, 2018, accident. [DN 16-1]. The

Court disagrees.

"Since the Erie doctrine requires a federal court sitting in diversity to apply the law of the

forum state, Kentucky law governing this defense applies." *Sanders v. Motorists Mut. Ins. Co.*,

No. CIVA 3:08-37-DCR, 2009 WL 2246184, at *2 (E.D. Ky. July 27, 2009). A party establishes

a defense of accord and satisfaction by use of an instrument under the Kentucky Uniform

Commercial Code KRS § 355.3-311(1) when the party proves *first*, "(a) [the party] in good faith

tendered an instrument to the claimant as full satisfaction of the claim; (b) [t]he amount of the

claim was unliquidated or subject to a bona fide dispute; and (c) [t]he claimant obtained payment

of the instrument," and, *second*, if those factors are satisfied, the party "proves that the instrument

or an accompanying written communication contained a conspicuous statement to the effect that

the instrument was tendered as full satisfaction of the claim." KRS § 355.3–311(1), (2).[4] *See also*

---

[4] KRS § 355.3-311 provides in full:
    (1) If a person against whom a claim is asserted proves that:
      (a) That person in good faith tendered an instrument to the claimant as full satisfaction of the claim;
      (b) The amount of the claim was unliquidated or subject to a bona fide dispute; and
      (c) The claimant obtained payment of the instrument,
    the following subsections apply.
    (2) Unless subsection (3) of this section applies, the claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim.
    (3) Subject to subsection (4) of this section, a claim is not discharged under subsection (2) of this section if either of the following applies:
      (a) The claimant, if an organization, proves that:
        1. Within a reasonable time before the tender, the claimant sent a conspicuous statement to the person against whom the claim is asserted that communications concerning disputed debts, including an instrument tendered as full satisfaction of a debt, are to be sent to a designated person, office, or place; and
        2. The instrument or accompanying communication was not received by that designated person, office, or place.
      (b) The claimant, whether or not an organization, proves that within ninety (90) days after payment of the instrument, the claimant tendered repayment of the amount of the instrument to the person

9

*Estes v. McKinney*, 354 S.W.3d 144, 148 (Ky. Ct. App. 2011); *Ross Bros. Const. Co., Inc. v. Markwest Hydrocarbon, Inc.*, 196 F. App'x 412, 414 (6th Cir. 2006).  To defeat the discharge of the claim under this statute, a claimant must repay "the amount of the instrument to the person against whom the claim is asserted" "within ninety (90) days after payment of the instrument." KRS § 355.3-311(3)(b).  "Whether a debt or a claim is discharged based upon accord and satisfaction is normally a question of fact and, therefore, an inappropriate basis for summary judgment." *Estes*, 354 S.W.3d at 148 (citing *Liggons v. House & Associates Ins.*, 3 S.W.3d 363, 365 (Ky. Ct. App. 1999)).  "However, accord and satisfaction may become an issue of law 'if the requisite controlling facts are undisputed and clear.'"  *Id.*

Here, the controlling facts are undisputed.  Brown purchased an insurance policy from Lighthouse which was in force at the time of the accident.  Lighthouse filed the interpleader action in the Vanderburgh Superior Court seeking to deposit into the court registry the $50,000 insurance policy limits and seeking a declaration that "LIGHTHOUSE's duty, and any contractual obligation of indemnification to Anna Brown [its insured] for any claims, actions, proceedings or cause of action for personal injury, arising out of the aforementioned January 28, 2018 accident, is hereby discharged." [DN 16-5].  Lighthouse also sought relief from "any duty to indemnify, reimburse Anna Brown and/or any other Defendant herein, for any claims, interests, actions, liens, proceedings or causes of action for personal injury arising out of the aforementioned January 28, 2018 accident." [*Id.*].  In its Motion to Deposit Funds and for Summary Declaratory Judgment, Lighthouse sought—and the Vanderburgh Superior Court subsequently granted—such

---

against whom the claim is asserted. This paragraph does not apply if the claimant is an organization that sent a statement complying with paragraph (a)1. of this subsection.
(4) A claim is discharged if the person against whom the claim is asserted proves that within a reasonable time before collection of the instrument was initiated, the claimant, or an agent of the claimant having direct responsibility with respect to the disputed obligation, knew that the instrument was tendered in full satisfaction of the claim.
KRS § 355.3-311.

declarations and granted Lighthouse leave to deposit the limits of the insurance policy with the clerk of court for Vanderburgh Superior Court.  [DN 16-11, DN 16-15].  At that time, the parties to the interpleader action—J.M., M.H., James Hicks, and L.F.—agreed that the entry of the "Summary Declaratory Judgment, Deposit of Funds, and Motion to Disburse Said Funds" be granted and agreed on the division of the insurance policy limits with J.M. receiving $22,500 of the $50,000 policy limits.  [DN 16-12, Joint Consent].  The checks tendered to the Vanderburgh Superior Court by Lighthouse do not have any specific information regarding releasing any claims.

First, assuming that section (1) of KRS § 355.3-311 is satisfied[5], Defendants failed to prove that "the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim."  KRS § 355.3–311(2).  Unlike the cases relied upon by Defendants—*Morgan v. Crawford*, 106 S.W.3d 480 (Ky. Ct. App. 2003) (check) and *Estes v. McKinney*, 354 S.W.3d 144 (Ky. Ct. App. 2011) (letter accompanying check), a review of the checks tendered by Lighthouse to the clerk of court reflects no statement or even an inference that the instruments were tendered in full satisfaction the claims against anyone, including Brown and Hatfield.  [DN 16-15].

If the Court were to consider the Joint Consent signed by J.M.'s guardian as an "accompanying written communication" under the statute [DN 16-12], the Joint Consent similarly does not prove that the checks were tendered in full satisfaction of all of J.M.'s claims against Brown and Hatfield arising out of the accident.  The Joint Consent specifically states that "[t]he above cause of action was initiated on the 7th day of June, 2019 and an Amended Complaint was

---

[5] J.M. argues that Defendants cannot establish the first element of the accord and satisfaction defense because Defendants were not a party to the Joint Consent or the payment of the policy limits.  Defendants dispute this argument asserting that J.M. was well aware that Lighthouse insured the Defendants and that any settlement amount would be paid on Defendants' behalf by Lighthouse.  Both parties fail to cite any case law regarding their respective positions on this topic.  In light of its decision *infra*, the Court declines to explore this argument.  Logically, if Brown and Hatfield are found liable in this action and J.M. is awarded damages, the first $22,500 in damages have been satisfied by the insurance proceeds.

filed by the Plaintiff, Lighthouse Casualty Company, to interplead *its* liability limits of $25,000 per person/$50,000 per accident under policy number INTH106457." [DN 16-12 at ¶1 (emphasis added)].  Here, Lighthouse instituted an interpleader action seeking to avoid multiple liabilities from various claimants and seeking to prevent any future indemnity requests from its insured through its payment of the insurance policy limits into the Vanderburgh Superior Court.  [DN 16-5].

As demonstrated by the Joint Consent, the liability in question in the interpleader action addressed *only* Lighthouse's liability under the policy of insurance.  No mention is made of releasing any claims against Brown or Hatfield (the insureds) in the Joint Consent.  No mention is made of paying the policy limits into the Court registry for full satisfaction of the liability of Brown and Hatfield.  The parties to the Joint Consent merely agreed that they had no objection to the Court entering an order "permitting, at this time, Lighthouse to pay $50,000.00 to the Clerk of the Vanderburgh County Court and receive *its* discharge."  [DN 16-12 at ¶ 11].  The parties additionally agreed to the disbursement of those funds.  [*Id.* at ¶ 12].  The Joint Consent served only to extinguish any further liability of Lighthouse pursuant to the insurance policy.  Nothing in the excerpts to the interpleader action provided to the Court indicates that J.M. or the other signatories agreed to release Brown and Hatfield from *all* claims—only Lighthouse was relieved of any further liability because it tendered the policy limits of the insurance contract.

Second, in contrast to the representation of Defendants, it does not appear to the Court that Lighthouse was attempting an accord and satisfaction by use of an instrument, i.e., a check, as KRS 355.3-311 contemplates.  As explained by the Kentucky Court of Appeals in *Est. of Adams by & through Mitchell v. Trover*, 547 S.W.3d 545 (Ky. Ct. App. 2018), "the Drafters proposed . . . UCC § 3-311, to govern situations where the tender of a negotiable instrument attempts an accord

and satisfaction." *Trover*, 547 S.W.3d at 553 (citing *Morgan v. Crawford*, 106 S.W.3d 480, 481

(Ky. App. 2003).  This common scenario predates the UCC:

> When a claim is in dispute and the debtor sends to his creditor a check or other remittance which he clearly states is in full payment of the claim and the creditor accepts the remittance or collects the check without objection it is generally recognized that this will constitute a good accord and satisfaction. . . . And when a check is sent upon the condition that it be accepted in full payment of a disputed claim, there is, as a general rule, but one of two courses open to the creditor, either to decline the offer and return the check or to accept it with the condition attached. The moment the creditor indorses and collects the check, knowing it was offered only upon condition, he thereby agrees to the condition and is estopped from denying such agreement.  It is then that the minds of the parties meet and the contract of accord and satisfaction becomes complete.  That rule is correct.

*Trover*, 547 S.W.3d at 553 (quoting *Alcorn v. Arthur*, 20 S.W.2d 276, 277 (Ky. 1929)).  As noted

by the Kentucky Court of Appeals, "[i]n the fact pattern contemplated by KRS 355.3-311, and the

common law it codified, there is no underlying agreement to settle the disputed claim." *Trover*,

547 S.W.3d at 553.  "This is because, under KRS 355.3-311, the underlying claim must remain

unliquidated." *Id.*; KRS § 355.3-311(1)(b).  "Sending the check itself is the ploy or the bait to

encourage the recipient's agreement to compromise the dispute." *Trover*, 547 S.W.3d at 553.  "In

other words, under KRS 355.3-311, the check itself is the first party's offer of dispute resolution,

and negotiation of the check is the second party's acceptance of that offer." *Id.*  "If this occurs,

the effect is to liquidate the previously unliquidated claim." *Id.*  "On the other hand, when parties,

disputing an unliquidated claim, enter into a separate, independent agreement compromising their

positions and settling on a specified sum to resolve the conflict, the amount in dispute is no longer

unliquidated."

Here, as in *Trover*, the compromise and settlement occurred prior to the negotiation of the

check by J.M.'s guardian.   The parties entered into a separate, independent agreement

compromising any claims against Lighthouse and settling on the specified disbursement of the

policy limits pursuant to the Joint Consent.   Thus, the amount in dispute between J.M. and Lighthouse was no longer unliquidated.   Thus, "[t]he accord and satisfaction had occurred previously by negotiation and settlement as memorialized" in the Joint Consent.   *Trover*, 547 S.W.3d at 553.   And, as discussed above, J.M.'s guardian signed the Joint Consent releasing *only* Lighthouse from future liability for any amount above its policy limits.   Neither the Joint Consent nor the Order signed by the Vanderburgh Superior Court released any claims against Brown or Hatfield.   "'A release must be interpreted according to contract principles, and where the release is unambiguous, such language controls the scope of the release.'"   *U.S. ex rel. Robinson-Hill v. Nurses' Registry & Home Health Corp.*, No. CIV.A. 5:08-145-KKC, 2013 WL 1187000, at *2 (E.D. Ky. Mar. 20, 2013) (quoting *Bell BCI Co. v. United States*, 570 F.3d 1337, 1341 (Fed. Cir. 2009) ("We look to the plain language of the release, as "if the 'provisions are clear and unambiguous, they must be given their plain and ordinary meaning.'" (citation omitted)).   Because the settlement agreement did not release Brown or Hatfield from any further negligence actions or liability, J.M. is not barred from bringing such claims.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss and/or Summary Judgment [DN 16] is **GRANTED IN PART AND DENIED IN PART**.   All claims brought by Michelle Vannoy against Defendants are dismissed.

Joseph H. McKinley Jr., Senior Judge
United States District Court

April 1, 2022

cc: counsel of record

14